John Morrison
Linda M. Deola
MORRISON SHERWOOD WILSON DEOLA PLLP
401 N. Last Chance Gulch · P.O. Box 557
Helena, MT  59624-0557
Telephone: (406) 442-3261
john@mswdlaw.com
ldeola@mswdlaw.com

John Heenan
BISHOP & HEENAN
1631 Zimmerman Trail, Ste. 1
Billings, MT  59102
Telephone:  (406) 839-9091
john@bishopandheenan.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA, MISSOULA DIVISION

| | |
|---|---|
| THE DEPOT, INC., a Montana Corporation, UNION CLUB BAR, INC., a Montana Corporation, and TRAIL HEAD, INC., a Montana Corporation, on behalf of themselves and all those similarly situated, | Cause No. _____ |
| Plaintiffs, | **COMPLAINT** *PUTATIVE CLASS ACTION* |
| vs. | |
| CARING FOR MONTANANS, INC., F/K/A BLUE CROSS AND BLUE SHIELD OF MONTANA, INC., HEALTH CARE SERVICE CORP., and JOHN DOES I-X, | |
| Defendants. | |

COME NOW the Plaintiffs, by and through counsel, and for their Complaint, state and allege as follows:

## SUMMARY OF CASE

1.    Plaintiffs and thousands of others similarly situated entrusted BCBSMT with their employee benefit plans through the Chamber Choices health insurance arrangement.  BCBSMT violated that trust by charging Plaintiffs and the others unauthorized and undisclosed surcharge amounts exceeding the medical premium, which amounts it used to pay for unlawful kickbacks to an association that marketed the health insurance to its members and to purchase other insurance products that the customers did not request or authorize.  In doing so, BCBSMT misappropriated plan assets for its own benefit while misrepresenting and concealing these facts, violating its duties under ERISA and state common law and causing Plaintiffs and others significant economic losses.  Plaintiffs bring this suit to recover the improperly obtained and misappropriated funds, and for all other relief to which they are entitled.

## PARTIES, JURISDICTION AND VENUE

2.    At material times, Plaintiffs The Depot, Inc., (Depot), Union Club Bar, Inc., (Union Club) and Trail Head, Inc., (Trail Head) are and were Montana Corporations; all maintain their principal places of business in Missoula, Montana, and all paid premiums for, received, and provided to their employees group health insurance coverage that was sold by BCBSMT.  The health insurance was

marketed through the Montana Chamber of Commerce, a membership association ("the Chamber"), and the arrangement was known as the "Chamber Choices" health insurance program.

3.     At all times material hereto, Blue Cross and Blue Shield of Montana, Inc. ("BCBSMT") was an independent Montana health services corporation doing business in the State of Montana.  On July 31, 2013, as part of the transaction described below, the name of BCBSMT was changed to Caring for Montanans, Inc. (CFM).

4.     On July 31, 2013, Health Care Service Corp. ("HCSC") acquired the existing health insurance business of BCBSMT.  Under the terms of the transaction, HCSC left the public assets of BCBSMT in BCBSMT, which the same day changed its name to CFM.  Applicable law required the fair market value of these assets at the time of the transaction to be donated to a charitable entity, § 50-4-701, *et seq*., MCA.  Under the terms of the transaction, however, HCSC purported to leave the future contingent legal liabilities of BCBSMT in CFM, to be paid out of the aforementioned public assets before said assets are donated to the charitable entity.  HCSC paid no consideration to BCBSMT or CFM in return for

CFM's assumption of these liabilities.   HCSC then began doing business in Montana as Blue Cross Blue Shield of Montana.[1]

5.    Federal question jurisdiction exists under 28 U.S.C. § 1331, because Plaintiffs' Complaint affirmatively asserts a claim under federal law, the Employee Retirement Income Security Act (ERISA), and specifically, 29 U.S.C. §§ 1109 and 1132.  Jurisdiction also exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a putative class action with more than 100 putative class members that places in controversy more than $5 million, and there is minimal diversity.   Supplemental jurisdiction over Plaintiffs' state law claims also exists under 28 U.S.C. § 1367.

6.    Venue is appropriate in this division under ERISA's venue provision, 29 U.S.C. § 1132(e)(2), and alternatively under 28 U.S.C. § 1391(b)(2), because BCBSMT misappropriated premium surcharges in Missoula County and misrepresented information to Plaintiffs in Missoula County who relied on that information in Missoula County.  Acts and omissions complained of herein were at material times committed by BCBSMT directly and through its agents in Missoula County.  Further, Plaintiffs maintain their principal places of business in Missoula County and entered into the health insurance plans and contracts at issue in Missoula County and the contracts were performed in Missoula County; all

---

[1] For clarity and ease of reference, the term BCBSMT is used to describe the conduct of Blue Cross Blue Shield of Montana, Inc., n/k/a CFM, before the transaction and HCSC d/b/a Blue Cross Blue Shield of Montana after the transaction.

Plaintiffs claims asserted herein are interrelated with the Missoula based health insurance contracts between BCBSMT and Plaintiffs and, although common law tort causes of action are asserted herein, Plaintiffs seek only that relief that is consistent with equitable contract remedies.

## FACTUAL BACKGROUND

7.      From approximately 2006 through 2014, BCBSMT charged employers participating in Chamber Choices surcharge amounts in excess of the medical premium, which amounts it secretly used to pay for unlawful kickbacks to the Chamber as an inducement to the Chamber to continue this marketing arrangement for BCBSMT' benefit.  In 2008, BCBSMT billed employers through a service company called HealthServe, which increased the surcharges in order to collect revenue to not only pay higher kickbacks to the Chamber but also to purchase other insurance products that the employers did not request or authorize, embedding the excess charges into the premium so that they were concealed from the employers and their employees.   In 2009, BCBSMT brought the billing functions for Chamber Choices back in-house and continued to overbill Chamber Choices members to pay for the kickbacks to the Chamber and the additional unauthorized insurance products, and continued to conceal these facts from the Chamber Choices employers.   Plaintiffs were among these employers during certain material years.  The excess surcharges, which BCBSMT called "external rates," were embedded in the monthly premium and were concealed during at least

the years 2008 through the end of 2011.  BCBSMT paid the kickbacks in order to secure business for itself, despite the fact such conduct was contrary to the interests of and harmful to Plaintiffs and was illegal.  BCBSMT used the term "internal rates" to describe the actual cost of the medical premium for which BCBSMT was providing insurance benefits to the members, spouses, and dependents covered by the Chamber Choices health insurance plans.  The internal rates included BCBSMT's administrative expenses.  Beginning in or about 2012, BCBSMT made certain cryptic notations about the external rates on the bills being sent to Plaintiffs and other Chamber Choices members, but continued to misappropriate these funds for its own benefit.  After HCSC acquired the BCBSMT business and began doing business in Montana as BCBSMT in 2013, it continued to charge the external rates to pay for the kickbacks to the Chamber and the other unauthorized insurance products, misappropriating these funds for its own benefit.

8.     At all times material hereto, BCBSMT was party to small employer health insurance contracts with Plaintiffs.  The contracts required Plaintiffs to pay health insurance premiums in return for health insurance coverage provided by BCBSMT.  An implied term of each Chamber Choices health insurance contract was that the amount charged and collected by BCBSMT as the health insurance premium was the medical premium — BCBSMT's "internal rate" — and not other extra charges for making illegal kickback payments or for purchasing other products that the Plaintiffs had not requested or authorized.

9.    On February 10, 2014, following a market conduct exam, the Montana Commissioner of Securities and Insurance imposed a $250,000 fine against BCBSMT for illegal insurance practices, including billing in excess of the medical premium and paying kickbacks to the Chamber, neither of which are permitted by the Montana Insurance Code, Title 33 of the Montana Code.  Neither CFM nor HCSC challenged the findings and the fine was paid out of the public assets that remained in CFM.  The Insurance Commissioner's findings were first announced publically March 13, 2014.   This was the first time that the public was made aware of BCBSMT's afore described misconduct and Plaintiffs were not actually aware of the afore-described misconduct until after March 2014.

10.    BCBSMT concealed and did not disclose its misconduct, thus tolling applicable limitation periods relating to the claims presented herein until such time as BCBSMT's conduct was discovered and exposed by the Insurance Commissioner *and* thereafter until such time as Plaintiffs had actual knowledge of it.

11.    Under Montana law governing corporate succession and Montana's conversion law, § 50-4-701, et seq., MCA, HCSC was required to assume the liabilities of BCBSMT as part of the transaction in which it acquired and continued doing business as BCBSMT and is liable for the relief sought herein by Plaintiffs and the Class.  Thus, in addition to its liability for its own misconduct after the

transaction in which it acquired the BCBSMT business, HCSC bears liability for BCBSMT's misconduct prior to the transaction.

## COUNT I – BREACH OF FIDUCIARY DUTY – ERISA

12.     Plaintiff incorporates by reference all prior allegations.

13.     The external charges imposed by BCBSMT and misappropriated from Plaintiffs and the Class were plan assets as defined in ERISA.  BCBSMT was at all material times a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) with respect to the plans because it: (1) exercised discretionary authority and control with respect to management of the plans of Plaintiffs and others similarly situated; (2) exercised authority and control with respect to management and disposition of plan assets; and (3) had discretionary authority and responsibility in the administration of the Plan.  BCBSMT was also at all material times a party in interest pursuant to 29 U.S.C. § 1002(14).  Plaintiffs were at all material times also ERISA fiduciaries.

14.     By embedding in the Chamber Choices monthly premium bills surcharges in excess of the medical premium for the purpose of making kickback payments and/or for the purpose of purchasing other products that Plaintiffs and the Class had not requested or authorized, by misleading Plaintiffs and the Class and concealing its conduct and by serving its own interests at the expense of Plaintiffs and the Class, and by later continuing to misappropriate the excess premium charges for these purposes, although making certain cryptic notations on the bills, BCBSMT breached its fiduciary duties to Plaintiffs and the Class under

29 U.S.C. § 1104 and engaged in prohibited self dealing in violation of 29 U.S.C. § 1006.

15.     BCBSMT's violations of ERISA described herein caused substantial economic losses to Plaintiffs and the Class, and entitled them to relief, pursuant to 29 U.S.C. § 1109 and §§ 29 U.S.C. § 1132(a)(2) and/or (3).

16.     Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's violations of ERISA prior to the transaction and HCSC is directly liable for its violations of ERISA d/b/a BCBSMT after the transaction.

## COUNT II - <u>BREACH OF CONTRACT</u>

17.     Plaintiffs incorporate by reference all prior allegations.

18.     By embedding in the Chamber Choices monthly premium bills surcharges in excess of the medical premium for the purpose of making kickback payments and/or for the purpose of purchasing other products that Plaintiffs and the Class had not requested or authorized, by misleading Plaintiffs and the Class and concealing its conduct and by serving its own interests at the expense of Plaintiffs and the Class, and by later continuing to misappropriate excess premium charges for these purposes, although making certain cryptic notations on the bills, BCBSMT violated the implied term of the Chamber Choices contracts that the amount charged and collected as the health insurance premium was the medical premium exclusive of other charges.  BCBSMT thereby breached the contracts.

19.   As a result of BCBSMT's breaches, Plaintiffs and the Class suffered economic losses and are entitled to appropriate relief.

20.   Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's breaches of contract prior to the transaction and HCSC is directly liable for its breaches of contract d/b/a BCBSMT after the transaction.

### COUNT III - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

21.   Plaintiffs incorporate by reference all prior allegations.

22.   The contracts between BCBSMT and Plaintiffs and other Class members contained an implied covenant of good faith and fair dealing that required BCBSMT to act with honesty in fact and in accordance with reasonable commercial standards.

23.   By embedding in the Chamber Choices monthly premium bills extra surcharges in excess of the medical premium for the purpose of making illegal kickback payments and/or for the purpose of purchasing other products that Plaintiffs and the Class had not requested or authorized, by misleading Plaintiffs and the Class and concealing its conduct and by serving its own interests at the expense of Plaintiffs and the Class, and by later continuing to misappropriate excess premium charges for these purposes, although making certain cryptic

notations on the bills, BCBSMT breached the implied covenant of good faith and fair dealing.

24.     As a result of BCBSMT's breaches, Plaintiffs and the Class suffered economic losses and are entitled to appropriate relief.

25.     Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's breaches of the implied covenant prior to the transaction and HCSC is directly liable for its breaches of the implied covenant d/b/a BCBSMT after the transaction.

**COUNT IV – <u>NEGLIGENT MISREPRESENTATION</u>**

26.     Plaintiffs incorporate by reference all prior allegations.

27.     By acting as described herein, BCBSMT committed negligent misrepresentation; to wit, BCBSMT (1) supplied false information in the course of its business; (2) failed to exercise reasonable care in communicating the information; (3) Plaintiffs and the Class justifiably relied on the false information, which caused their financial losses; (4) Plaintiffs and the Class are part of a limited group of persons for whose benefit and guidance the Defendant intended to supply the information; and (5) Plaintiffs and the Class relied on the information in transactions that the Defendant knew the information would influence.

28.     As a result of BCBSMT's negligent misrepresentation, Plaintiffs and the Class have suffered economic losses and are entitled to appropriate relief.

29.     Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's negligent misrepresentation and HCSC is directly liable for its negligent misrepresentation d/b/a BCBSMT after the transaction.

## COUNT V – <u>BREACH OF FIDUCIARY DUTY</u>

30.     Plaintiffs incorporate by reference all prior allegations.

31.     BCBSMT owed Plaintiffs and the Class fiduciary duties.

32.     By embedding in the Chamber Choices monthly premium bills extra surcharges in excess of the medical premium for making illegal kickback payments or for purchasing other products that Plaintiffs and the Class had not requested or authorized, by misleading Plaintiffs and the Class and concealing its conduct and by serving its own interests at the expense of Plaintiffs and the Class, and by later continuing to misappropriate excess premium charges for these purposes, although making certain cryptic notations on the bills, BCBSMT breached its fiduciary duties to Plaintiffs and the Class.

33.     As a result of BCBSMT's breaches, Plaintiffs and the Class have suffered economic losses and are entitled to appropriate relief.

34.     Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's breaches of fiduciary duty and HCSC is directly liable for its breaches of fiduciary duty d/b/a BCBSMT after the transaction.

## COUNT VI – <u>UNJUST ENRICHMENT</u>

35.    Plaintiffs incorporate by reference all prior allegations.

36.    To the extent BCBSMT embedded in the Chamber Choices monthly premium bills extra surcharges in excess of the medical premium for making illegal kickback payments or for purchasing other products that Plaintiffs and the Class had not requested or authorized, while misleading Plaintiffs and the Class, concealing its conduct and serving its own interests at the expense of Plaintiffs and the Class, and later continued to misappropriate excess premium charges for these purposes, although making certain cryptic notations on the bills, BCBSMT has unjustly been enriched to the same extent.

37.    BCBSMT should be disgorged of any and all illegal or excessive premiums collected, and such funds returned to Plaintiffs and the Class.

38.    Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's unjust enrichment and HCSC is directly liable for its unjust enrichment d/b/a BCBSMT after the transaction.

## COUNT VII – <u>CONSUMER PROTECTION ACT</u>

39.    Plaintiffs incorporate by reference all prior allegations.

40.    BCBSMT's conduct constitutes a general unfair trade practice under MCA Title 30, entitling Plaintiffs and the Class to actual losses or $500, whichever is greater, treble damages, other equitable relief, and their reasonable attorney's fees, pursuant to § 30-14-133, MCA.

41.    Either or both of the Defendants is/are the legal successor to BCBSMT and is/are therefore liable for BCBSMT's violations of the Consumer Protection Act and HCSC is directly liable for its violations of the Consumer Protection Act d/b/a BCBSMT after the transaction.

## COUNT VIII – <u>CLASS ALLEGATIONS</u>

42.    Plaintiffs bring this action on their own behalf and on behalf of a class of persons similarly situated pursuant to Rule 23(b)(3), Fed. R. Civ. Pro.

43.    The Class is comprised of all employers that purchased Chamber Choices health insurance from BCBSMT to provide health insurance plan benefits to themselves and/or their employees and their beneficiaries, and that made premium payments that included surcharges in excess of the medical premium as descried herein within the applicable limitations periods.

44.    The Class is so numerous that joinder of all members is impracticable. It is believed to include several thousand employers. The Complaint concerns an insurance billing practice that was common to all employers participating in the Chamber Choices health insurance program and was discretionarily imposed on them by BCBSMT for its own benefit and not imposed by BCBSMT generally in the small group health insurance market.  There are questions of law or fact common to the class.  BCBSMT's practice of imposing premium surcharges in excess of the medical premium involved the same monthly per member – per month surcharges in the same amounts for all members of the Class.  Therefore,

the common questions include whether this conduct violated BCBSMT's duties under ERISA and met the elements of each of the common law causes of action delineated above. The claims of Plaintiffs are typical of those of all members of the Class.

45.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interest antagonistic to those of the Class.  Plaintiffs' counsel are competent and experienced in consumer class actions.

46.     BCBSMT has acted on grounds generally applicable to the Class, thereby making final relief appropriate with respect to the Class as a whole.

47.     The questions of law and fact common to the Class predominate over any question affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class members are insurance consumers that may be unable to locate or afford attorneys for this purpose.  Most are likely unaware that their rights under ERISA and Montana common law have been violated.  The amounts of actual losses per consumer, while not insignificant to a consumer, are generally too small to justify the expense of individual litigation, and thus a consumer class action is particularly well-suited to address violations and for recovery by the Class.

48.     The Class may be certified under Rule 23(b)(3), Fed. R. Civ. P., as such represents a superior method for the fair and efficient adjudication of this controversy in that:

(a)     Most of the Class members are not aware of their rights and have no knowledge that their rights have been violated;

(b)     The interest of Class members in individually controlling the prosecution of separate claims is small because of the limited losses per consumer in relation to the cost of litigation;

(c)     Management of this class action is not likely to present significant difficulties;

(d)     Defendants acted on grounds generally applicable to the Class; and

(e)     Certification of the Class under Rule 23 of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the Class, thereby making appropriate relief with respect to the Class as a whole.

49.     Plaintiffs request certification of the Class for purposes of pursuing a class action.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class, respectfully requests the following relief against Defendants:

a.     That this honorable Court certify the Class and appoint Plaintiffs class representatives and its attorneys as class counsel;

b.      Repayment of all amounts charged by BCBSMT and paid by Chamber Choices consumers in excess of the medical premium as alleged above, costs and attorney's fees;

c.      Treble damages for violation of the Consumer Protection Act;

d.      An order of disgorgement and/or restitution and/or other appropriate equitable order;

e.      Pre-judgment interest to the extent permitted by law; and

f.      Such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38, F. R. Civ. P., the Plaintiffs hereby demand a trial by jury of the issues triable by right by jury.

Dated this 13th day of June, 2016.

MORRISON SHERWOOD WILSON DEOLA PLLP
BISHOP & HEENAN

_____/S/ JOHN MORRISON_____
John Morrison
Linda M. Deola
John Heenan
*Attorney for Plaintiffs*