

**FILED**

JUN 2 3 2017

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| THE DEPOT, INC., a Montana Corporation, UNION CLUB BAR, INC., a Montana Corporation, and TRAIL HEAD, INC., a Montana Corporation, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CARING FOR MONTANANS, INC., F/K/A BLUE CROSS AND BLUE SHIELD OF MONTANA, INC., HEALTH CARE SERVICE CORP., and JOHN DOES I–X,<br><br>Defendants. | CV 16–74–M–DLC<br><br>ORDER |

Before the Court is the renewed joint motion to dismiss of Defendants Caring for Montanans, Inc. ("CFM") and Health Care Service Corporation ("HCSC"). On February 14, 2017, this Court granted Defendants' first motion to dismiss, granting Plaintiffs leave to amend their complaint. Plaintiffs filed their First Amended Complaint ("FAC") on March 8, 2017. Defendants now argue that Plaintiffs have failed to remedy the deficiencies identified in this Court's earlier

-1-

order and that all claims should be dismissed with prejudice. The Court agrees.

## BACKGROUND

"On a motion to dismiss, material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff." *Kennedy v. H & M Landing, Inc.*, 529 F.2d 987, 989 (9th Cir. 1976).

This Court's Order of February 14, 2017 recounts the general history leading up to the initiation of this putative class action on June 13, 2016. Following that Order, Plaintiffs filed the FAC. In addition to the allegations included within the original complaint, the FAC alleges that the relationship between Defendants and Plaintiffs was distinguishable from the average insured/insurer relationship because Defendants were able to modify the terms of the insurance arrangement during the calendar year. Plaintiffs, all of which are small businesses, further claim that they are uncommonly dependant on Defendants' services due to their lack of sophistication in selecting and administering employee benefits.

Aside from the modified factual allegations, the FAC also presents new legal theories. Plaintiffs allege two new claims under Montana law, claims for fraudulent inducement and constructive fraud. They have reframed their claim for negligent misrepresentation, asking the Court to consider only the conduct

predating the creation of the ERISA plan.

**LEGAL STANDARD**

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.*

**ANALYSIS**

The briefings on Defendants' renewed motion to dismiss are largely duplicative of those filed on the first motion to dismiss. The parties have not presented legal argument suggesting that the Court erred in its Order granting Defendants' first motion to dismiss. Thus, the Court addresses only whether Plaintiffs' amendments to the complaint alter the outcome, referring generally to its earlier Order for the relevant legal principles.

**I.      Count I: Breach of Fiduciary Duty under ERISA**

The most significant differences between the original complaint and the FAC are designed to support Plaintiffs' argument that Defendants are fiduciaries under ERISA. Plaintiffs have alleged additional facts, all of which are intended to show that the relationship between Plaintiffs and Defendants was "extraordinary"—beyond the scope of the normal insurer/insured relationship. Much of Plaintiffs' brief is targeted to this point. However, Plaintiffs' argument that this particular insurer/insured relationship differs from others misconstrues Defendants' arguments and this Court's earlier order. Even if the parties did not have equal bargaining power, the relationship was ordinary in the sense that Defendants sold insurance, and Plaintiffs purchased that insurance. Plaintiffs have not alleged that Defendants advised them in any way regarding insurance products, only that Plaintiffs depended on Defendants to consider their best interests. While the Court is sympathetic to Plaintiffs, particularly considering that they are small businesses dependent primarily on an unskilled workforce, it does not alter the Court's reasoning. Plaintiffs' expectations of Defendants—which may, indeed, include that Defendants would act as a fiduciary should—cannot be used to support their claim that ERISA considers Defendants to be fiduciaries.

While it may be true that Plaintiffs were somewhat vulnerable in negotiating

their insurance contracts with Defendants, it does not follow that Defendants were fiduciaries with respect to the relevant conduct—assessing and collecting premium moneys. The FAC does not change the reasoning set forth in this Court's earlier Order regarding Defendants' alleged exercise of discretion over plan management or administration.

First, Defendants had no discretionary authority or control over plan management or administration, even if Plaintiffs mistakenly believed that they did. The phrases "plan management" and "administration" do not refer to an insurer's selection of insurance products but rather to the plan manager or administrator's conferral of benefits and dealings with beneficiaries. *See, e.g., Varity Corp. v. Howe*, 516 U.S. 489, 502–03 (1996). In the present case, it is Plaintiffs, not Defendants, who were fiduciaries under the administration and management theory. Plaintiffs' dependence on Defendants' insurance expertise does not change this analysis because it was ultimately Plaintiffs' responsibility to manage and administer the plan in the best interest of the beneficiaries.

Second, even if Defendants had exercised such control, the relevant conduct here is the imposition and collection of premiums. Plaintiffs' claims do not arise from plan management and administration at all. Rather, all of Plaintiffs' claims are grounded in their allegation that Defendants charged too much for premiums

and did not freely give information about the basis for those premiums. Plaintiffs' amendments have no effect on the Court's analysis of the original complaint.

Finally, for the same reasons set forth in this Court's Order of February 14, 2017, Plaintiffs have not alleged that Defendants exercised authority or control regarding management or disposition of plan assets. As discussed in this Court's earlier order, plan assets may not include the assets of an insurer. Plaintiffs argue that "Defendants exercised control over plan assets [before the money had changed hands] when they charged Plaintiffs (i.e., directed them to pay) the Surcharge and the Additional Surcharge—knowing that Plaintiffs would unquestioningly pay the bills." (Doc. 50 at 10.) However, Plaintiffs' argument, if accepted, would effectively rewrite ERISA's provision excluding an insurer's assets from plan assets. Again, Plaintiffs' relative lack of sophistication demonstrates why they may not have equal bargaining power with insurers, but it does not mean that ERISA provides them a cause of action.

## II. Count II: Nonfiduciary Party in Interest Claim

Unlike the original complaint, the FAC separately pleads a claim for equitable relief under § 502(a)(3). Despite this alteration, the allegations relevant to this claim are unchanged, and Plaintiffs have not remedied the defects identified by the Court in its earlier order.

Here, there is no issue of law to be resolved. As in this Court's earlier Order, there is no dispute regarding whether the allegations fit the mold of § 502(a)(3)—they do—or about whether § 502(a)(3) recognizes disgorgement as an equitable remedy, even when the defendant is a non-fiduciary—it does. The question here is simply whether Plaintiffs have alleged facts plausibly suggesting that equitable relief may be available in the particular circumstances.

Plaintiffs have not met their burden. Plaintiffs request remuneration and have alleged no facts suggesting that the requested relief is anything other than money damages. Plaintiffs describe their demand as one for "appropriate equitable relief . . . , including but not limited to the monetary remedies of surcharge, disgorgement of profits, and any other 'make-whole' relief." (Doc. 45 at 20–21.) However, as alleged, the facts demonstrate that the relief sought is legal in nature, not equitable. Plaintiffs claim that Defendants profited at their expense, and Plaintiffs seek compensation for their damages. Plaintiffs have not alleged that the wrongful payments were maintained in a segregated account such that equity provides a solution. Although the terms "restitution" and "disgorgement" are used, the requested relief is money damages. For the reasons identified in this Court's order of February 14, 2017, Plaintiffs have no claim under § 502(a)(3).

### III. Counts III–VII: State Law Claims

Counts III through VII are grounded in state law. In addition to those state law claims alleged in the original complaint, Plaintiffs have brought claims for fraudulent inducement and constructive fraud.[1] Additionally, they have reworked their claim for negligent misrepresentation. Through the changes, Plaintiffs attempt to show that their state law claims arose from Defendants' conduct prior to the issuance of the policy. The amendments are unsuccessful, and Plaintiffs have no viable state law claim.

Plaintiffs cite to *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.* for the proposition that ERISA does not preempt a claim for negligent misrepresentation when a plaintiff alleges that pre-contract misrepresentations induced plan participation. 170 F.3d 985, 991. Although this was true in *Woodworker's Supply*, which involved a claim against an insurance agent—not a party in interest under ERISA—it does not follow that Plaintiffs' claim against Defendants is similarly allowable. Plaintiffs have not cited to a single case in which a court allowed a similar state law claim to proceed against a

---

[1] Plaintiffs have also brought claims for unjust enrichment and violation of the Montana Consumer Protection Act, which have not been meaningfully altered following the original complaint. Their argument in favor of these claims follows that regarding negligent misrepresentation—they seek relief for Defendants' conduct in negotiating the plans, which occurred before the plan existed. Because the conduct at issue is the same that gives rise to their claim for negligent misrepresentation, the same analysis applies as to the claims as to negligent misrepresentations. Thus, the claims are preempted.

party in interest, which makes sense given that ERISA was wholly indifferent to the agent's conduct in *Woodworker's Supply* and to the conduct at issue in Plaintiffs' other cited cases. Here, however, ERISA speaks to the allegedly wrongful conduct, preempting Plaintiffs' claims.

Section 502(a)(3) creates a cause of action when a party in interest "caus[es] the plan to engage in a transaction" for "more than reasonable compensation." 29 U.S.C. §§ 1106(a)(1)(C), 1108(b)(2), 1132(a)(3). However, as discussed in Section II of this Order and this Court's Order of February 14, § 502(a)(3) does not provide a remedy in this particular instance. Thus, even though Plaintiffs, "relegated to asserting a claim only under ERISA, [are] left without a remedy," ERISA preempts Plaintiffs' claim for negligent representation. *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1010 (9th Cir. 1998). Because Plaintiffs' claims for fraudulent inducement and constructive fraud are premised on the same facts, and therefore fall within the ground covered by ERISA, these claims, too, are "alternative enforcement mechanisms," preempted by federal law. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995).[2]

Accordingly, IT IS ORDERED that Defendants' Joint Motion to Dismiss

---

[2] Additionally, as Defendant Health Care Services Corp. points out, Plaintiffs have not met the heightened pleading standard required under Federal Rule of Civil Procedure 9(b) as to their allegations of fraud.

(Docs. 46, 48) is GRANTED. Plaintiffs' Amended Complaint (Doc. 45) is DISMISSED with prejudice. The Clerk of Court shall enter judgment in favor of Defendants and shall CLOSE this case.

DATED this 23rd day of June, 2017.

*Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court